UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br>vs.<br>ERIC LADEAUX,<br><br>                Defendant. | 5:21-CR-50052-KES<br><br>ORDER DENYING<br>MOTION FOR NEW TRIAL OR<br>JUDGMENT OF ACQUITTAL |

      Defendant, Eric LaDeaux, moves for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. Docket 464. LaDeaux argues that he is entitled to a new trial on the basis of newly discovered exculpatory evidence that he alleges was withheld by the prosecution. *See id.* at 1–2. LaDeaux also moves for a judgment of acquittal. *See id.* at 2. The United States opposes LaDeaux's motion. Docket 499. For the following reasons, the court denies the motion for a new trial or judgment of acquittal.

**BACKGROUND**

      LaDeaux was indicted on one count of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). Docket 134. Magistrate Judge Daneta Wollmann initially appointed Ellery Grey to serve as LaDeaux's attorney. Docket 148. Magistrate Judge Wollmann later granted Grey's motion to withdraw due to a conflict of interest and appointed Koln B. Fink to serve as LaDeaux's attorney. See

Dockets 188, 190. LaDeaux waived his right to a jury trial and consented to a court trial. *See* Docket 429; Docket 446. After the court trial, on August 31, 2023, Judge Jeffrey Viken returned a verdict of guilty on the sole charge, conspiracy to distribute a mixture or substance containing 500 grams or more of methamphetamine. Docket 449.

LaDeaux filed a *pro se* motion to remove Fink as his attorney, claiming that Fink refused to file a motion to set aside the verdict. Docket 459. The court denied LaDeaux's motion to remove Fink. Docket 461. On September 19, 2023, LaDeaux nonetheless filed a *pro se* motion for a new trial or a judgment of acquittal. Docket 464. Fink then filed a motion to withdraw as counsel on the grounds that his relationship with LaDeaux had completely broken down. Docket 471. On October 2, 2023, Magistrate Judge Wollmann granted Fink's motion to withdraw and permitted LaDeaux to represent himself *pro se*. Docket 474. On October 26, 2023, the United States filed its response in opposition to LaDeaux's motion for a new trial or a judgment of acquittal. Docket 499.

**LEGAL STANDARD**

I. **Motion for a New Trial**

Under Rule 33 of the Federal Rules of Criminal Procedure, a court can vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "As a general rule, the decision whether to grant or deny a motion for a new trial lies within the discretion of the district court." *United States v. McMahan*, 744 F.2d 647, 652 (8th Cir. 1984) (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)). "When considering a

motion for a new trial, the district court may 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.' " *United States v. Dowty*, 964 F.3d 703, 708 (8th Cir. 2020) (quoting *United States v. Amaya*, 731 F.3d 761, 764 (8th Cir. 2013)).

The court's authority to grant a new trial should nonetheless be used cautiously and sparingly. *United States v. Cole*, 537 F.3d 923, 926 (8th Cir. 2008) (citation omitted). "Rule 33 is [an] unusual remedy that is reserved for 'exceptional cases in which the evidence preponderates heavily against the verdict.' " *United States v. Anwar*, 880 F.3d 958, 970 (8th Cir. 2018) (alteration in original) (quoting *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002)). "Unless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *Campos*, 306 F.3d at 579.

## II. Motion for Acquittal

Rule 29 allows convicted defendants to file a motion for judgment of acquittal after a jury returns its verdict. Fed. R. Crim. P. 29(c)(1). The jury verdict "must be upheld 'if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt.' " *United States v. Espinoza*, 885 F.3d 516, 520 (8th Cir. 2018) (quoting *United States v. Taylor*, 813 F.3d 1139, 1146 (8th Cir. 2016)). The Rule 29 "standard is 'very strict' and a jury's verdict should not be overturned lightly." *United States v. Boesen*, 491 F.3d 852, 855 (8th Cir. 2007) (quoting *United States v. Ellefson*, 419 F.3d 859, 862 (8th Cir. 2005)). A defendant may file a

Rule 29 motion at the conclusion of a court trial as well as a jury trial. *See United States v. Mitchell*, 388 F.3d 1139, 1142 (8th Cir. 2004).

The essential elements of a crime for which a defendant is found guilty may be proven by circumstantial or direct evidence. *United States v. Baker*, 367 F.3d 790, 797 (8th Cir. 2004). "Th[e] court views the entire record in the light most favorable to the government, resolves all evidentiary conflicts accordingly, and accepts all reasonable inferences supporting the jury's verdict." *Boesen*, 491 F.3d at 856 (citing *United States v. Water*, 413 F.3d 812, 816 (8th Cir. 2005)). A Rule 29 motion is distinct from a Rule 33 motion in that "the district court is not to weigh the evidence or assess the credibility of witnesses[]" but rather is to evaluate the evidence in the light most favorable to the government to determine if a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Baker*, 367 F.3d at 797.

## DISCUSSION

### I.  Whether the interests of justice require the court to vacate the judgment and grant a new trial

LaDeaux asserts that the prosecution failed to disclose exculpatory evidence in a timely manner in violation of *Brady*. *See* Docket 464 at 2. "To prove a *Brady* violation, a defendant must show that the prosecution suppressed [] evidence, the evidence was favorable to the accused, and the evidence was material to the issue of guilt or punishment." *United States v. Hernandez*, 299 F.3d 984, 990 (8th Cir. 2002) (quoting *United States v. Duke*, 50 F.3d 571, 577 (8th Cir. 1995)). "Evidence is material if there is a reasonable

4

probability that the outcome of the proceeding would have been different if the evidence had been disclosed." *Id.*

LaDeaux does not state what evidence he alleges was withheld. The most specific allegation he makes is that the prosecutor "did not provide discovery until she used it in her favor the day of trial." *See* Docket 464 at 2. The government speculated in its response that LaDeaux may be referring to Facebook data from co-conspirator Jose Arguello's Facebook account that was introduced at trial. *See* Docket 499 at 2. The relevant portions were labeled Exhibit 36A and contained conversations between Arguello and LaDeaux. *See* Docket 468 at 76–108. The government asserts that these Facebook records were disclosed during discovery. *See* Docket 499 at 2. But because the records were disclosed at the very latest during trial and in time for the defense to use them, there can be no *Brady* violation. *See United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005) ("Under the [Eighth Circuit rule,] *Brady* does not require pretrial disclosure, and due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial.") (citing *Nassar v. Sissel*, 792 F.2d 119, 121 (8th Cir. 1986)).

Moreover, the government does not suppress evidence where the defendant had equal access to the evidence or could have discovered the evidence through reasonable diligence. *Johns v. Bowersox*, 203 F.3d 538, 545 (8th Cir. 2000). Here, the allegedly undisclosed evidence was a Facebook conversation between Arguello and LaDeaux. LaDeaux could have viewed the

5

evidence through his own Facebook account. Thus, LaDeaux and the government had equal access to the evidence.

The court cannot, from LaDeaux's motion, determine what evidence he alleges was not disclosed. Even if LaDeaux intended to implicate the Facebook records labeled Exhibit 36A, there would still be no *Brady* violation because the evidence was disclosed at trial and LaDeaux had equal access to the evidence before trial. *See Almendares*, 397 F.3d at 664; *Bowersox*, 203 F.3d at 545. Thus, the court does not find a *Brady* violation occurred and LaDeaux's motion for a new trial is denied.

## II.    Whether sufficient evidence exists to sustain the guilty verdict

LaDeaux also moves for judgment of acquittal. *See* Docket 464 at 2. In his motion, LaDeaux does not explain why the evidence at trial was insufficient to sustain his conviction. *See generally id.* LaDeaux waived his right to a jury trial and consented to a trial by the District Court. *See* Docket 429. In reaching a guilty verdict, Judge Viken necessarily found that evidence existed sufficient to sustain that verdict. *See* Docket 449.

In order to convict LaDeaux of conspiracy to distribute a controlled substance, the government was required to prove beyond a reasonable doubt "(1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *United States v. Davis*, 867 F.3d 1021, 1033 (8th Cir. 2017) (quoting *United States v. Taylor*, 813 F.3d 1139, 1146–47 (8th Cir. 2016)). Because LaDeaux was convicted of distributing 500 grams or

more of a mixture or substance containing methamphetamine, the government was also required to prove beyond a reasonable doubt that the conspiracy involved 500 grams or more of the drug. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *United States v. Borders*, 270 F.3d 1180, 1184–85 (8th Cir. 2001) (noting that requiring "the jury to make a special finding of drug quantity beyond a reasonable doubt" was proper in a case where "the indictment alleged drug quantity").

 Multiple witnesses testified about the conspiracy to distribute methamphetamine that was headed by Arguello and about LaDeaux's role within the conspiracy. Gerald Baker testified that LaDeaux facilitated a drug transaction between Baker and Arguello. Devina Dersera testified to receiving a package of methamphetamine at her home on Gemini Street in Rapid Valley on Arguello's behalf. She estimated that the shipment contained five or six pounds of methamphetamine. When that shipment arrived, Dersera testified that LaDeaux helped Arguello weigh and package the drugs for distribution. Dersera estimated that Arguello received four or five methamphetamine shipments during the summer of 2020, not all to her home. She also testified that Arguello "fronted" approximately one to two ounces of methamphetamine to LaDeaux to sell several times, but eventually became dissatisfied with the amount of money LaDeaux was bringing him in return and stopped fronting methamphetamine to LaDeaux. Dersera testified that LaDeaux carried a firearm when he and Arguello

delivered methamphetamine to customers. She also testified that she shipped cash to suppliers on Arguello's behalf to pay for the methamphetamine that would then be distributed in South Dakota.

South Dakota Division of Criminal Investigation Special Agent Trista Dupres testified that Arguello sent money to Mexico using Moneygram during the conspiracy. *See* Docket 504 at 27–28. She testified that Arguello sent money himself and arranged for others to send it on his behalf. *See id.* at 28–34. Dupres testified that Arguello also mailed cash to pay for methamphetamine, and that law enforcement observed Arguello using third persons to ship packages through mail carriers. *See id.* at 34–36. Receipts from some of these shipments were introduced into evidence, along with a timeline summarizing the payments. *See* Docket 448 at 112–13, 115, 121.

The government also introduced Facebook messages sent between Arguello and LaDeaux from an account belonging to Arguello. In one message from Arguello to LaDeaux, Arguello said, "[S]ee if something comes its supposed to come Friday but cant miss this and I trust you brother that shit can[']t be intercepted[,]" to which LaDeaux replied, "I…gotta pick up this car…and u know I got you." Docket 448 at 93. The government also introduced Facebook messages between LaDeaux and Kevin Dunn in which Dunn asked LaDeaux to sell him methamphetamine in exchange for a firearm, to which LaDeaux replied, "Cant ain't mine" and "400[.]" *Id.* at 22. LaDeaux later messaged Arguello and said, "Kevin Dunn wants you to hit

8

him up asap[.]" *Id.* at 94. Evidence was introduced that Dunn went on to receive shipments of methamphetamine on Arguello's behalf. *See id.* at 121.

Based upon the evidence described above, the court concludes that a rational trier of fact could have found beyond a reasonable doubt that LaDeaux was guilty of conspiracy to distribute 500 grams or more of methamphetamine.

## CONCLUSION

LaDeaux's allegation that the prosecution failed to timely disclose exculpatory material is too vague to adequately address. Furthermore, the court finds that the evidence presented at trial was sufficient to sustain the guilty verdict. Thus, it is

ORDERED that LaDeaux's motion for a new trial and motion for a judgment of acquittal (Docket 464) is denied.

DATED December 18, 2023.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE